Argument first this morning in number 2011-1384, RATES TECH v. MEDIATRIX TELECOM. Mr. Hicks. Good morning, Your Honor. May it please the Court? Jim Hicks for Jim Hicks. Basically, I think that the sanctions award against me in this case should be reversed because it goes against, as I've argued in my brief, more than 70 years of precedent. Ever since interrogatories have been around, the rule has been all you have to do to respond to an interrogatory is give what information you have. If someone wants to argue, someone should have the information. You bring a Rule 11 motion or something like that, and they brought a Rule 11 motion twice, and both times it was denied. Well, the information that you say you needed was in the possession of the other side, according to you, right? Our assumption is it was. I mean, essentially, I wasn't the patent lawyer in the case. The patent lawyer was the lawyer. So what's wrong with saying that you had an obligation to secure the necessary information through the discovery process and that you failed to do that? Well, I think the major problem with that is the patent lawyer explained that we could not reverse engineer these products. The only way to get the information would be to get it from the other side. Now, I'm not a patent lawyer. I've never claimed to be a patent lawyer. But why didn't you have an obligation to get it from the other side? As I understand it, there were no discovery motions pending here and that you didn't move to compel the production of the information that you thought you needed. No, actually, I believe in the brief I've cited two, three discovery motions that I brought before the magistrate, and she denied all of them. Basically, we took some discovery, and then I filed a motion to file an amended complaint. In my motion, and in the amended complaint, I said that I did not have enough evidence to support the claims that I needed to take discovery. Both the magistrate judge and the judge granted leave to file the amended complaint, and both of them specifically noted that I needed to take discovery. From that point forward, Mediatrix never provided discovery, and every motion that I brought to compel that discovery was denied. So, basically, I said I needed discovery. I was never allowed to take the discovery. There's been no showing that I tried to take the wrong discovery or something like that. Basically, we asked the questions that I was told by the patent lawyer needed to be asked, and we wanted to find out how these Mediatrix products worked because we could not reverse engineer them. And we believed that they worked similarly to other products which had been found to be infringing, and we had worked out those things with those defendants, and we had brought the claim because we figured we would be allowed to take some discovery to be allowed to do that. But at the end of the day, I wasn't allowed to take the discovery. It's undisputed between the parties that after I was allowed to file the amended complaint in which I said both in the motion and in the complaint that I needed to take discovery, I was never allowed to take discovery again. Every motion that I brought was denied. Well, basically, Mediatrix never gave me a discovery response after I filed the amended complaint. When I brought a motion to compel the discovery, those motions were all denied. So, basically, I had a situation where the defendant is refusing to respond to my discovery. I bring motions to compel. Those motions are denied. And meanwhile, the magistrate judge is ordering me every three months or so to give answers to this interrogatory that from the beginning of the lawsuit, I say we can't answer the interrogatory. We don't have the information. Well, actually, not from the beginning of the lawsuit. At one point, you said I'd be happy to provide. I think what I said was I'd be happy to give what I have, but this lawsuit was filed in late 2005, and I've attached an excerpt from the transcript of the hearing from January 2006 in front of the first magistrate judge in which I said I've given everything we have, and the magistrate judge specifically says, well, Mr. Hicks says he's given you everything he has. I don't see how we can ask him for more. He was replaced by a second magistrate judge who then asked me for that more, which I didn't have. What discovery requests were denied? There were some discovery requests where you sought to compel them to answer interrogatory as to why they didn't infringe. Let's put those aside. What discovery requests for documents or depositions were denied that involved necessary information in your view? Those discovery requests are not directly quoted in the brief, but I do reference my motions, and the motions are related to interrogatories that asked how the software worked, that asked how the means were updated, because those were the key issues in the patent infringement claim. Basically, we had tested it using an electronics engineer. We believed that it infringed, but from the beginning... Where are the references to motions to compel discovery as to how it worked? Where do we find that in the record here? Those would be... Here's my declaration, which is at DE-235. DE-127 is the order from the district court which specifically recognizes that Rates Technology says it needs to take more discovery to support its claims. What I'm looking for is... You say that you made a motion to compel a necessary discovery as to how this worked, and that that was denied. How do I know that from this record? I'm looking... Well, I have found so far the citation in my declaration saying that, and I'm looking for the citations to the orders. Because I know that I cited that in my brief. Here we are. DE-156 and DE-157. Those were orders denying my motion for leave to ask additional interrogatories, and a motion denying my motion to compel Mediatrix to produce a document. Show me where in those two orders you were asking for information about how this worked, and you weren't permitted to do that. I do not have the orders in front of me, and I apologize for that. I have the references to DE-156 and 157, but I don't have the record in front of me. For example, this 156 refers to what seems to be an interrogatory requesting unredacted copies of all settlement agreements, etc., etc. That doesn't seem to have anything to do with your ability to answer their interrogatory about infringement. That was... I believe that portion would be their request. I don't believe I ever asked for settlement agreements. Okay, well, wait. Show me... fair enough, but show me where there's an order denying a request that you made that relates to material that you needed to answer the interrogatory. I do not have the record in front of me, and so I can't cite the specific language in DE-156 and 157, but those are two orders which denied my request to take discovery. But still, at the end of the day, it's been 70 years since the federal rules were first enacted. They were done, like, 1938. Starting in 1939 and 1940, cases have come down and unanimously said, all you have to do is give the information you have. If there's going to be a rule that says you have to discover or find additional information that you don't have to respond to an interrogatory, that should be a well-announced case, so the bar knows what's going on rather than the throwaway sentence here that says whether or not I had the information makes no difference. In your declaration, and this is consistent with the position you've taken in the brief, you say that you had, RTI and I, had valid grounds for believing that Mediatrix's accused products infringed RTI's patents. Now, what exactly was that information that you had that was the valid ground for believing that there was infringement in this case? I guess you'd have to sing to an RTI in me. Both of us were relying upon a patent lawyer named Mr. Epstein, and Mr. Epstein had analyzed the different products and had gone over the electronics engineer's test of the Mediatrix product, and he had determined physically and electronically how it infringed. Mr. Epstein was the person who prepared the chart and the legal analysis of how it infringed, and I was a litigator. Now, in large part, I proceeded the way that I did because I was not necessarily in this courtroom or even in this building because I'm not sure it was here 12 years ago, but in one of the very first cases I ever handled for rates, there's a Rule 11 motion, not for myself in the trial court, but I handled the appeal to this courtroom, and the panel held that really what we did in that case was fine. Okay, okay, okay. We need to talk about this because you said exactly that in your brief in six different places. Your appeal was an appeal of a denial for attorney's fees under the Exceptional Case Doctrine, and the other side appealed saying we should have gotten attorney's fees, and you argued to this court, because I've read your brief now, among other things, that finding wasn't wrong, we did adequate investigation, there was no problem here, and then you also argued it's not an abuse of discretion because even if we did something wrong, there are all these reasons why it's not an abuse of discretion, it's the discretion of the district judge, therefore the court should affirm. Now for you to stand here and say this court held you did an adequate pre-suit investigation under those circumstances, when our court Rule 36'd the case, which means only that we affirm the judgment and specify no reasons as to why, is quite improper. You argued this to the district court, you argued it to us. We actually have a rule in this court, you can't cite unpublished decisions that issued prior to 2007. You never even mentioned this is a Rule 36. You don't mention that it's unpublished, which, by the way, breaks the rules of this court to even cite it to us as precedent, which you did. And on top of it all, it's a Rule 36, which stands for none of the things that you're articulating it stands for. It's entirely improper for you to cite the Rule 36 to this case, to this court. I'd like to respond to that. I wasn't citing it as precedent. I mean, if I was citing an unpublished case from different parties, unrelated... This is a... you have this in bold and underlined in your brief. This is a fully adequate pre-litigation examination under applicable federal circuit law. See rates technology versus Teleflip select systems Inc. 251, F-3rd, 170. But the reason... In what universe is that not being cited to me as precedent? Well, I felt that it was especially applicable because of the fact that I relied upon that prior ruling. And in the oral argument on that, we discussed... You relied upon the prior ruling. What was the ruling of the federal circuit? It was an affirmance of a judgment that denied attorney's fees only. It did not validate your pre-litigation investigation. Well, I remember the argument quite well because of the fact that the client was very concerned about whether it had done an adequate pre-filing investigation. And one of the major... I mean, in large part, it's my memory of the argument and the argument about whether or not they had to test more than one product or if they should test all the products that were accused. And there was a great deal of back and forth and discussion about the one product versus all the products. So now the oral argument that's conducted by this court is effectively a holding that you can quote to district court, except you didn't even quote it. It's your recollection of the argument that is now a holding? Well, I'm not trying to argue that it's precedent. What I'm trying to argue is... Since RTI's pre-investigation filing process had been approved in RTI versus Teleflex by this court, that's another quote from your brief. There's about five or six of them like that. Well, it was my understanding that it had been approved. And if I'm wrong, I sincerely apologize. But basically, what I'm trying to say is that 10 years ago, my client was in a similar argument situation. And just coincidentally, both the client and I were before a panel arguing that the pre-filing investigation was good enough. And basically, we followed that procedure for the next 10 years in terms of what to do before filing a lawsuit. If I can return to that question of what was done before the lawsuit. And you mentioned Mr. Epstein, and you mentioned he prepared a chart indicating the reasons that he believed there was infringement in this case. Now, did you provide that information in response to the requests as to your theory of infringement? Yes, in two ways. One, Mr. Epstein, in fact, made an argument before the magistrate judge and showed her the chart. And it was also attached to an interrogatory response. I don't know if the chart is accurate or makes sense, but basically, he said that it showed the infringement. I'm not a patent lawyer. I mean, I can read it, but I don't claim to be an electrical engineer or a computer engineer or anything like that. I'm a litigator, and my understanding is that... You're a litigator who counsels clients in patent matters. In patent litigation, but I've always relied upon an outside patent lawyer who's admitted to the patent bar, such as Mr. Epstein. But the court kept asking you for an element-by-element comparison and ordering you to produce it. And at one point, you said you happily would, and then you didn't. And you never did produce an element-by-element, and your argument to the court was, well, we don't think, we're not arguing it infringes any individual claim, just the whole patent. That was the last answer. We gave several different answers trying to come up with something that would satisfy the magistrate. Well, none of them were the element-by-element comparison. You did it for other patents and other claims. You provided an element-by-element comparison, but for this one, you didn't. I don't believe we did. Why didn't you just withdraw the complaint as to that claim? I don't believe we ever provided an element-by-element comparison until we were able to take discovery to give us enough information to do that. I don't think I've ever claimed that we do that in every other claim. What I've said is in every lawsuit, we got outside opinions. We used an engineer to the extent that the client couldn't analyze the product itself. We did all kinds of stuff. In this particular case, we got the outside engineer. We reviewed what we believed the way it worked. And I think from the beginning, I never said I'd be happy to give the full element-by-element analysis. I said I'd be happy to give a response. But from the beginning, I always said I needed to take discovery to be able to give a complete response. And the first magistrate judge recognized that. He said, Mr. Hicks said he's given you all he can. I don't see how you can ask him for the more that he doesn't have. Okay. We've run through your rebuttal time, but we'll save you a couple of minutes for rebuttal. Why don't we hear from the opposing counsel? Thank you. Thank you. Mr. Hicks. Now Mr. Conrad. Good morning, and may it please the court. I think the only real issue here is whether the district court applied the correct rule in Rule 37. The short answer is yes, it did. District courts have broad discretion in choosing sanctions. I don't think that's quite what the issue is. Okay. This DE-157 does seem to be in order from the magistrate judge with respect to one of the discovery requests, asking to have more interrogatories about how the defendant's toll-grabbing system works, right? So there were discovery requests to get more information about how it worked that were denied, correct? There were discovery requests, yes. It skips over a very important part of the case. Earlier in the case, there was a substantial production of exactly the kind of materials Mr. Hicks said he needed to perform an element-by-element imprinting analysis. That was in April of 2006. Thousands of documents were produced, including technical documents like schematics and drawings, bills of materials and user manuals and other things. The district court relied on that production, said it was substantial and should be the kind of production that would allow Mr. Hicks to produce an element-by-element analysis. Now, he moved to compel production. When you say the district court relied on that, where did the district court, where do we have that reliance on the district court explicitly on that production? Yes, Your Honor. Well, maybe your colleague can obtain that. I don't want to use up all your time looking for it. I apologize. It is in the order adopting the report and recommendation. Well, you see what the problem is. The sanctions were imposed not for lack of pre-filing investigation, but for refusal to respond to the interrogatory. And the defense is, well, we couldn't respond to the interrogatory because we needed more discovery as to how these call routing systems work. And if, in fact, there wasn't adequate discovery allowed with respect to that question, then that may call the sanctions into question themselves. Right. As to the discovery, Mr. Hicks only points to two elements that he contends actually required additional discovery. He doesn't say anything at all about the other elements and I don't think doesn't even dispute that he could have at least provided a partial element-by-element analysis, and that would have been useful in this case. One of the purposes of having an early contention interrogatory is to define the scope of the case for discovery and to allow it to go forward, to allow defendants to pursue a summary judgment motion or something like that. But we never even had a partial element-by-element analysis to figure out what the dispute was really. Did you get the Epstein chart and Mr. Epstein's analysis? Mr. Hicks refers to that Epstein analysis as something that happened during a hearing. I believe what happened during that hearing is that— During the hearing, the court asked, is this part of the record and was told that it actually wasn't part of the record. What does that mean? It wasn't part of the materials that were submitted. It was actually submitted sort of impromptu during the hearing. But was it produced during the hearing as part of a response, informal or formal, to your request for an assertion, what the infringement assertions were? Yes, it was. It was part of what happened during that hearing. And now it's part, presumably, of the record now. I think so. There's just reports that it wasn't going to consider what was not produced, was not part of the motions and materials, that it was too late to produce something like that. This was at the hearing on the sanctions motion? One of the sanctions. Oh, this was not during the process leading up to the sanctions. This was on the sanctions? No, I'm sorry. I didn't mean to say that, Your Honor. This was during an earlier hearing. There were many hearings on this issue during the case. This was at an earlier stage, and Mr. Epstein was allowed to speak and attempted to hand up a claim to our house. I think that— Let me ask the question this way. Sure. So you had Mr. Epstein and you had his chart for whatever it was, and of course we don't have either one of them in the limited materials that we have here. What was the substance of Mr. Epstein's theory of infringement, and why was it inadequate in your view? Right. The idea behind an element-by-element analysis is to compare the products and the claims. What this did was basically repeat the claim language. It didn't actually point to specific components, specific accused components or anything like that. It's similar to what happened in this court's case in Refack v. Hitachi, where there was actually no element-by-element analysis that was done. It was all at a high level. Of course, it ended up in an end product where there was a response to the interrogatory that alleged infringement of one patent as a whole, and as to the other patent was a handwritten drawing where the accused device was one small component of an overarching system. I think Mr. Hicks could have answered this interrogatory response successfully in one of two ways. First, he could have, as I said, given a partial response at the very least. There are some very easy claim elements here. A couple of examples are a housing or an enclosure, telephone jacks, a source for generating current. There's even one element that requires a time and date display to be visibly displayed on the housing. But none of those were actually identified either in any accused product. So are you conceding that he didn't have the information to make a full response? No, Your Honor. We haven't conceded that at all. Well then, so how? Did he have the information to make a full response? He had, at the very least, he had the information to provide a response that would have been sufficient, would have given an element by element analysis to allow the litigation to move forward. He argued that he had everything he asked for and everything he was permitted under discovery, and if he failed to ask for certain things he needed, that is at his own peril. That's my understanding. Not only did he have what he asked for, but after we gave it to him several months later, he moved to compel production of exactly the same materials. But wait, in this DE 157 order, he's asking for interrogatories to explain how the cold routing system worked, and those interrogatories are refused, right? Right. They were refused, yes. What was your argument there? The district court refused those because it was an attempt to shift the burden to defendants to prove non-infringement. It wasn't, that was an evasive, he had given evasive responses to the interrogatory and hadn't provided any kind of element by element information. Wait, wait, I'm not understanding. I understand that there were interrogatories that asked you to say why you didn't infringe. I understand why the magistrate judge said those didn't have to be answered. Let's put that aside. The interrogatories that are involved here don't fall into that category. They seem to be interrogatories asking you to describe how the cold routing system worked, which of course would be pertinent information to answer the interrogatories that you propounded. My understanding is that the interrogatories that were denied were actually a follow-up to the non-infringement contention interrogatories and asking for a specific basis for why. Well, that's not how this reads. It says plaintiff asserts that it needs more information about the details of the defendant's cold routing system in order to develop a meaningful claim construction chart. Look at the order. Right, in 157? Yes. Can you point me to that again, Your Honor? It's 535. Right. It's at the middle of the page there. Right. My understanding is that this is basically plaintiff's characterization of what the interrogatory asked for. The interrogatory was asking for the basis for the non-infringement contention. Is the interrogatory that was at issue in this motion to compel or the interrogatories that were at issue in this motion to compel in the joint appending? I'm not sure, Your Honor. I don't believe so, Your Honor. I know at DE 94 is one of the motions to compel, DE 94 in the appendix. That's where Mr. Hicks asked for Mediatrix to be ordered to describe the facts supporting its denial of infringement. And then there was the second part of it, which was the order to compel basically the technical manuals that had already been produced. As I said before... But if there was an interrogatory that said, we want your client to describe how the system works, and if that was refused, that would be a problem, wouldn't it? I don't think so, Your Honor. I don't think so at all. Why not? Because this was the second and third chance. Mr. Hicks had already asked for discovery that he said he needed to do this analysis. He received that discovery and then didn't do the analysis. What happened here, and I think the district court recognized this, is no matter what we produced, he was always going to come back for more. The district court saw this, and I don't think it's a clearly... Did you ever answer interrogatories to how the full routing system worked? Not to my knowledge. I believe there were the two non-infringement contentions where we identified specific elements that we didn't believe to be in the components. That's true. But this is not... Is it your recollection that there was no interrogatory that asked how the system works? There were 25 or so interrogatories. I don't remember all of them individually, but I don't believe so. The extra interrogatory, in my understanding, was for the factual basis for the non-infringement contentions. It was not explain how your system works. That's my understanding, anyway. It makes a difference as to whether this is asking for your proof that you didn't infringe or whether it involves a request to explain how your system works. I don't think it does. I mean, we're talking about an electronic device patent. Mr. Hicks has referenced certain cases relating to chemical processes that are impossible to learn anything about without discovery. But that's not true here. They were able to buy a product and test it and give it to a consulting engineer and run tests on it. We made clear throughout this process that this contention interrogatory wasn't asking for proof of infringement. It was just asking for contentions, asking where you believe these elements are found in the infringing system. A belief they should have formed before filing a complaint. Well, that's certainly our belief, is that it should have been formed before filing the complaint. But at the very least, it should have been formed after receiving the discovery that was requested in order to perform that analysis. And the district court was well within its discretion to state that between those two things, Mr. Hicks should have been able to provide allegations. And that's very important for allowing to shape litigation and allow the litigation to go forward. It's a very important reason that Rule 37 exists. The fact is that Mr. Hicks has been playing a kind of shell game between Rule 11 and Rule 37 as well. He's focused on his pre-suit investigation. But the district court was entitled to hold him to his word under Rule 11 that he had performed this investigation and then asked him to disclose it. And when he didn't disclose it, especially... But he wasn't sanctioned for the lack of a pre-filing investigation. No, he wasn't. He wasn't. But the district court was entitled to rely on his pre-suit investigation as evidence of bad faith and willfulness under Rule 37, which is a requirement in order to dismiss the complaint. There has to be egregious conduct that would actually support such a severe sanction like that. Let me return to a question that Judge Dykast a moment ago. I want to make sure I understand whether your answer is yes, no, or I don't know. Sure. Yes, Your Honor. Was there an interrogatory either in connection with the order that's the E-157 or otherwise asking about how the accused device works? And my answer is I don't know. I can tell you what I believe that interrogation, what this discussion relates to. Belief is all that helpful because we really can't operate on belief. Has the cavalry come to your rescue there? No. No? All right. Well, in that case, what I think would help the court in this case is for the parties jointly, if possible, separately if necessary, to provide us with the interrogatories. Our joint appendix here seems to be missing some of the information that would be helpful to try to get to the bottom of what was at issue in the requests and what requests were denied. What we have is the orders denying, but we don't have the underlying requests. We'd be happy to do that. So if you could provide those within a week, if that's reasonable. Is there anything else that's completely reasonable? Thank you, Your Honor. Thank you. May I briefly reply? Yes, you have two minutes. Okay. Basically, they brought two rule of motions. They were both denied. They brought a motion under section 1927. That was denied. They brought a motion for all kinds of sanctions against me for a lack of pre-filing investigation. All of those are denied. All of those are now reissued to CADA because they've never appealed any of those denials, and at this point they've missed their appeal deadlines. The only thing that was ever granted was a sanction saying I didn't completely respond to the interrogatory. And whether or not I sent out the interrogatories asking them for the information, I only had two and a half months to do so. Because if you look at the amended complaint, which was the order allowing it to be filed was on June 29, 2007, in which I specifically said I needed discovery. And the hearing on the sanctions was in September of 2007, two and a half months later. Basically, I had two and a half months to send out discovery. And I believe I did, and we'll obviously do the supplemental filing to show you whatever that discovery was. But I never had a chance, really, beyond those two and a half months after the first amended complaint was filed to seek this discovery. And even then, the rule on interrogatories is different from Rule of and 1927 and all the other things about whether or not I should have had the information or didn't do enough work to get the information. The only thing interrogatory is do you have it? If the interrogating answer is I ran a light, I went through a light and I was too drunk to know whether it was red or green, that's a sufficient interrogatory answer because you don't know if it's red or green. That may lead to a Rule of Insanction or some other dismissal, but at the end of the day, as long as you answer interrogatory, that's fine. And they have never, to this day, pointed to some information which we have, which we did not put in response to the interrogatory. They say they gave us complete responses, etc., but they've not shown anything that we could have shown them in the interrogatory that we actually had. We were missing it. It's undisputed that we didn't have the evidence. Whether or not the lawsuit should have been filed, two Rule of Motions were denied. All the sanctions motions were denied except for this one discovery sanctions motion. And if we're going to have a rule that says when you respond to interrogatories, you need to have information that you don't have. You need to go out and find it to respond to the interrogatory, that should be spelled out so that people know about it. Because right now, we have 70 years of precedent that says when you respond to an interrogatory, you can say, I don't have the information and I'm really sorry, but we just don't have it. And I guess that, I believe that we did our best to litigate the lawsuit, but at the end of the day, you have that. And I'm also really constrained by the fact that I can't talk about all the things that Mr. Epstein and I talked about because those would be attorney-client privilege. And under this court's ruling, and I've cited the case and I've forgotten the name because I'm under pressure, of course, but I've cited it in both the reply brief and the opening brief. At San Diego Federal Court, it inflicted massive sanctions on attorneys and they were all reversed because of the fact that the attorneys could not step out of the attorney-client privilege and say, here's what we did. There are no monetary sanctions on appeal against the parties. There was never a motion for monetary sanctions against Mr. Epstein, who's the lawyer who did all the analysis leading up to this lawsuit and who spoke to the district court judge and explained his analysis. No one's even ruled for sanctions against anyone but me and I had a right to rely on Mr. Epstein's analysis because I'm not a patent lawyer and I've never claimed to be a patent lawyer. And from the beginning and throughout the case, I said, I don't have enough evidence to respond. They let me file the amended complaint. If they didn't want it, the court should have not allowed me to file the amended complaint, but there's no point in letting someone file an amended complaint and then give them only two and a half months to take discovery and deny every motion that's filed seeking to take that discovery. Okay. I think we have to bring it to an end there. Any other questions? Thank you.